# UNITED STATES DISTRICT COURT

for the

Western District of Texas

**FILED**

August 18, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **CD**

DEPUTY

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| THE RESIDENCE LOCATED AT 619 SADDLEBROOK DRIVE, | ) |
| SAN ANTONIO, TEXAS 78245; THE PERSON OF STEPHEN | ) |
| EUGENE HALL, AND ANY ELECTRONIC DEVICES AS | ) |
| FURTHER DESCRIBED IN ATTACHMENT B | ) |

Case No. **SA:23-MJ-01158**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Western___ District of ___Texas___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| 18 U.S.C. § 2422(b) | Coercion and enticement of a Minor |

The application is based on these facts:

See Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**DAVID RODRIGUEZ** Digitally signed by DAVID RODRIGUEZ
Date: 2023.08.17 09:00:10 -05'00'

*Applicant's signature*

David Rodriguez, FBI Special Agent

*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to telephonically and signed electronically.

Date: ___08/18/2023___

City and state: ___San Antonio, Texas___

*Judge's signature*

Richard B. Farrer, U.S. Magistrate Judge

*Printed name and title*

**ATTACHMENT A**

**Person to Be Searched**

**Stephen Eugene Hall, DOB: 12/15/1983 and any electronic devices on the person**

The following image is a representation of the person to be searched:



**Property to Be Searched**

619 Saddlebrook Drive

San Antonio, Texas

1.      The property, to include the residence, curtilage, out buildings, and vehicles, located at **619 Saddlebrook Drive, San Antonio, Texas, 78245**, which is further described as follows:

A one-story, single-family residence, fabricated with a red-colored brick exterior, brown asphalt shingle roof to include a tan colored garage door. The house number 619 can be seen displayed above the garage door. The following images are a representation of the residence to be searched.



## ATTACHMENT B
## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. § 2422(b).

1. Computers or storage media used as a means to commit the violations described above.

2. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

   e. evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   g. evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

     h.   evidence of the times the COMPUTER was used;

     i.   passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

     j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

     k.   records of or information about Internet Protocol addresses used by the COMPUTER;

     l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

     m.  contextual information necessary to understand the evidence described in this attachment.

3.   Routers, modems, and network equipment used to connect DEVICES to the Internet.

4.   Child pornography, as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), child erotica, and any other visual depictions of minors.

5.   Records, information, and items relating to violations of the statutes described above including:

     a.   Records, information, and items relating to the ownership or use of the computer or storage media, including sales receipts, bills for Internet access, and handwritten notes;

     b.   Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

     c.   Records and information relating to sexual exploitation of children, including correspondence and communications between users of child pornography and exploitation websites;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing

25

or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

During the execution of the search the person of **Stephen Eugene Hall**, as described in Attachment A, law enforcement personnel are authorized to press the fingers (including thumbs) of ~~individuals found at the premises and of~~ **Stephen Eugene Hall**, to the fingerprint recognition sensor of any device(s) or to use the facial recognition feature of any device(s), found at the premises or on the person of **Stephen Eugene Hall**, as described in Attachment A for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant[, provided that device is reasonably attributable to **Stephen Eugene Hall** or is within his care custody or control.]

[Text edited by reviewing Magistrate Judge and altered accordingly in Attachment B to the warrant.]

# ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, David Rodriguez, being duly sworn, depose and say that:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 2008. I have received particularized training in the investigation of computer-related crimes, Usenet, peer-to-peer computer networking, and online crimes against children. I have conducted and been involved in numerous investigations of individuals suspected of producing, distributing and receiving child pornography and have participated in the execution of numerous search warrants which have resulted in the seizure of multiple items containing child pornography. I have been directly involved in investigations relating to the sexual exploitation of children, including observing and reviewing extensive examples of child pornography in film, photographs, and other print media. I have also received training in the investigation and detection of criminals involved in the sexual exploitation of children and child pornography.

2.      As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3.  I am investigating the Internet based activities **Stephen Eugene Hall** who resides at 619 Saddlebrook Drive, San Antonio, Texas 78245. As will be shown below, there is probable cause to believe that this individual has engaged in violations of 18 U.S.C.§ 2422 (b) – attempted online coercion and enticement of an individual under the age of 18 years old. I submit this application and affidavit in support of a search warrant authorizing a search of the residence located at 619 Saddlebrook Drive, San Antonio, Texas 78245; the person of **Stephen Eugene Hall**, date of birth XX-XX-1983; his mobile telephone and other electronic devices; and vehicle, as further described in Attachment A. I seek to seize evidence, fruits, and instrumentalities of the forgoing criminal violations, which relate to attempted online coercion and enticement of an individual under the of 18 years old. I request authority to search the entire premises and its curtilage, including the dwelling, any computers or computer media, and any vehicles located therein

where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

4.  The statements in this affidavit are based on my investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of § 2422 (b) – attempted online coercion and enticement of an individual under the age of 18 years old, are presently located at 619 Saddlebrook Drive, San Antonio, Texas; on the person of **Stephen Eugene Hall**, date of birth XX-XX-1983; on his mobile telephone or other electronic devices; or in his vehicle.

## **STATUTORY AUTHORITY**

5.  This investigation concerns alleged violations of 18 U.S.C. §§ 2422 (b), relating to attempted online coercion and enticement of an individual under the of 18 years old.

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

# DEFINITIONS

6.      The following definitions apply to this Affidavit and Attachment B:

a.      "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

b.      "Child Pornography" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

c.      "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e) (1).

d.      "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

e.       "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

f.       "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

g.       "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

h.       "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

i.       "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to appear to depict an identifiable minor, *see* 18 U.S.C. § 2256(8) (C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic

or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2) (A).

j.      Kik Messenger, commonly called Kik, is a freeware instant messaging mobile app from the Canadian company Kik Interactive, and available free of charge on iOS and Android operating systems. It is a social networking application that permits a user to trade and disseminate various forms of digital media while using a cellphone. Kik advertised itself as "the first smartphone messenger with a built-in browser."

k.      "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

l.      The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks ("DVDs"), Personal Digital Assistants ("PDAs"), Multi Media Cards ("MMCs"), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

7.      Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers

with whom I have had discussions, computers, computer technology, and the Internet have revolutionized the manner in which child pornography is produced and distributed.

8.      Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

9.      With digital cameras, images of child pornography can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

10.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

11.     The Internet affords individuals several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

12.     Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

13.     As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving

an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

14.    Based upon your Affiant's training and experience, your Affiant knows that individuals involved in the sexual exploitation of children often use portable electronic devices, such as mobile telephones ("smartphones"), tablet computer systems, thumb drives and other electronic devices which are easily concealed. Often times these portable electronic devices are concealed in vehicles under the seat, in the glove box or secured in other locations within the vehicle.

Additionally, cellular telephones, as well as other portable electronic devices are most often carried by individuals and not left in any one particular location.

## **SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS**

15.    Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a.    Computer storage devices can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b.    Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

8

16.     Furthermore, because there is probable cause to believe that the computer and its storage devices are all instrumentalities of crimes, within the meaning of 18 U.S.C. § 2422, they should all be seized as such.

## DETAILS OF THE INVESTIGATION

**Background:**

17.     On or about June 2, 2023, a complainant[1] operating an online persona on Kik advised the FBI that a 39-year-old male, username Stephen4040404040, display name **Stephen Hall (Hall)** had sent her images of his penis and messages indicating he desired to engage in sex with her 13-year-old undercover persona. The photos Hall sent included pictures showing his face. The complainant captured the chat conversations and images and sent them to the FBI. In addition, Hall provided the complainant with his snapchat username of Hall234381. Based on the information provided by the complainant, FBI Boston identified Kik user Stephen4040404040 as belonging to Stephen Hall, date of birth: XX/XX/1983, address 619 Saddlebrook Drive, San Antonio, Texas.

18.     In mid-June 2023, the complainant's persona provided Hall an introduction to an FBI Online Covert Employee (OCE) from the FBI Boston Field Office. The FBI Boston OCE utilized a Kik profile resembling (and purporting to be) a 12-year-old female. The FBI Boston OCE connected to the Internet in an online undercover capacity utilizing an undercover phone located at the FBI Boston Division area of operation and chatted with Hall. During the chat conversations, Hall sent two videos and two images of what I believe to be Hall's penis to the FBI Boston OCE's persona. In addition, the chat conversation included sexually explicit content regarding sexual interactions Hall would like to have with the 12-year-old persona.

19.     On June 26, 2023, the complainant's online persona introduced Hall to an FBI San Antonio OCE. The FBI San Antonio OCE utilized a Kik persona purporting to be a 14-year-old

---

[1] The complainant is a non-law enforcement individual that operates a covert online persona which they use to attempt to uncover criminals who have a sexual interest in children.

female. The FBI San Antonio OCE connected to the Internet in an online undercover capacity utilizing an undercover phone located at the FBI San Antonio Division area of operation and chatted with Hall. Hall initiated contact with the OCE, who stated his desires to have sex with the OCE's 14-year-old female persona. In addition, Hall sent the FBI San Antonio OCE a picture of what I believe to be his penis and stated he lives with a two-year-old male child. During the chat session, Hall provided his cellular telephone number as 904-491-0359 and stated he formerly resided in Florida.

### *Review of KIK direct messages between Stephen4040404040, complainant and OCEs*

20.     I reviewed the chat sessions between Hall and the complainant, as well as the chats between Hall and both FBI OCEs.

### *Complainant chats with Hall on KIK*

21.     In early June 2023, Hall contacted the complainant's 13-year-old persona on a social networking site: chat-avenue.com with username: Stephen40. All conversations were quickly transferred to KIK where Hall told the complainant to "Try to push 2 fingers in the hole ur pussy ok" and then directed her how to obfuscate her activities from her mother. When the complainant asked Hall if putting the fingers into her vagina would hurt, Hall stated, "I did it before to a girl ur age," and stated that the girl was his friend's sister. Further in the chats, Hall asked the complainant, "What would u do if I tried to put my dick in ur…open ur legs wide…put it [hand] in ur Pj's and touch ur pussy ok".

22.     The complainant later told Hall she was going to her 10-year old cousin's birthday party. Hall told the complainant to "get her[the cousin] to her room with u…" because Hall had a "present" for the 10 year old. Hall stated, "say a friend of urs wants me to give u a present". Hall then stated, "I am gonna have u finger her for my giff please" and then directed the complainant to "get ur cousin were no one can see u and her ok…she have a building or anything that can hide yall outsikde…say yall r gonna play a game [in the shed]…play doctor". Hall then sent the complainant an image showing his penis and then an approximately 15 second long video of

Hall masturbating his penis. Later, Hall sent the complainant an additional two images of his penis and stated, "What would u do it I tried to fuck u with the dick I showed u". Hall continued to engage in explicit sexual discussions, including sending the persona pictures of his penis. Hall also sent the complainant a video of Hall in the driver's seat of a white Nissan sedan, in which a pink colored car seat can be seen in the rear seat behind the passenger

23.    Later in the chats, Hall states that he cannot wait to see the complainant's vagina. The complainant states, "did you see one before like me?" Hall responds, "Yes it is sexy...I like them like urs". When asked who's vagina Hall saw, Hall states, "The girl I was dating ur age" and provides her name as "Dalrae."

24.    As an aside, I discovered a Nassau County, Florida, Sheriff's Report (CCR# 2018-12810), dated 02/18/2018, which describes the sexual assault of a 15-year-old victim named Dalrae XXXX (DOB XX/XX/2002) by Stephen Hall. The identifiers provided by the CCR match those of Stephen Hall listed in this affidavit. Dalrae disclosed to law enforcement that she sent Hall approximately five (5) nude images of herself while they were talking on a social media application. Dalrae met Hall in approximately 2017 and he forced her into his car and raped her. After the rape, Hall told her he would release her nude images on social media if she told anyone about raping her. Dalrae later recanted her statement and advised that Hall did not rape her and only gave her a ride to her friend's house.

***FBI Boston OCE chats with Hall:***

25.    In June 2023, an FBI OCE from the FBI's Boston Division chatted with Stephen Hall on Kik. The Boston OCE told Hall she was a 12-year-old female and Hall stated he was a 39 year old male who lived in Texas. Hall told the OCE, "If I was there what would u do if I tried to finger u baby". Hall also requested the OCE to send a picture of the OCE, "with ur pussy open and showing ur boobs...and with 2 fingers in u". Hall also requested the OCE, "Show u putting the [brush] handle in u". Hall sent the OCE a video of himself masturbating his penis. Hall also asked the OCE, "What would we do if I was there baby...I would be taking ur virginity baby".

***FBI San Antonio OCE chats with Hall:***

26.     Between approximately June 27, 2023 to present, an FBI OCE posing as a 14 year old female from the FBI's San Antonio Division has communicated with Stephen Hall on Kik. On or about June 27, 2023, Hall told the OCE, "I wish I can see u naked" and then sent the OCE an image of his penis and asked, "will u let me put it in u…how big r ur boobs". Hall provided his cellular telephone as 904-910-3519 and stated he lived in the San Antonio, Texas area. Hall later told the OCE, "What would y do if I tried to put my dick in ur ass…I want to eat ur pussy...it look so tight…do u suck dick…would u swallow my cum…would u try to swallow mine…or were(sic) would u want me to put it on u". OCE asked Hall to buy her AirPods, to which Hall agreed and responded, "Sneak me a boob pic for the air pods baby". Between June 28, 2023, and June 29, 2023, Hall provided his home address to the OCE as 619 Saddlebrook Drive, San Antonio, Texas.

27.     On or about June 29, 2023, Hall discussed meeting the OCE in a public store and sneaking into the store's restroom. Hall stated, "What would u do if u see me baby…It would u sneak to the bathroom with me". OCE asked Hall about getting caught together in a public restroom to which Hall responded, "They won't…we will go out at different times ok". OCE expressed her desire not to get caught by anyone while in the bathroom to which Hall stated, "U won't baby…I will make sure it is just me and u in it". Hall then asked the OCE if she moans and stated "OK I might try to put it in ur ass to baby".

28.     Later in the chat, OCE told Hall she and her mother were driving to a restaurant. Hall inquired where they were going and asked the OCE to have her mother go to the Golden Corral located near the subject's residence on Saturday so the OCE and Hall could engage in sex in the bathroom at the Golden Coral.

29.     Hall then attempted to lure the OCE to San Antonio Sea World and asks the OCE to have her friend drive her to Sea World. Hall stated, "What would u do if we met at sea world if u went with ur friend and I said meet me in the restroom and tried to finger ur ass hole". Hall then attempted to get the OCE to go to a nearby PetSmart or Walmart bathroom to engage in sex. Hall

continued, "what would u do if I cummed in ur mouth by accident…would u let me do it so u can spit it out baby." Hall continued to ask the OCE if he can have sex with the OCE without a condom and stated, "I won't cum in u baby I promise…I will cum on ur boobs".

30.    On or about August 11, 2023, Hall sent a text message from telephone number 904-910-3519 with general greetings and then told the OCE on KIK that he just sent the OCE a text message. Hall then sent two videos on KIK depicting Hall masturbating his penis as well as several images of Hall's tattoos. One of the pictures shows the letters "HALL" on the individual's arm.

### *Subpoenas*

31.    On July 12, 2023, the FBI received subpoena results from Snapchat for subscriber information associated with Snapchat account: Hall234381. The subscriber information listed email stephenhall8329@gmail.com as being associated with the account. The most commonly found IP address discovered was 66.25.170.246.

32.    On July 14, 2023, the FBI received subscriber information from a subpoena issued to KIK for KIK username Stephen4040404040. The subscriber data showed the registered user as Stephen Hall, and e-mail address: tomjohnson4532@gmail.com as being associated with the account. The KIK account was registered with an Android device, Motorola Moto g Stylus 5G phone. The most commonly observed IP address was 66.25.170.246. Open source research indicated that IP address 66.25.170.246 was registered to Charter Communications Inc. Thereafter, the FBI issued a subpoena to Charter for subscriber information related to IP address: 66.25.170.246.

33.    On August 14, 2023, Charter Inc provided subscriber information for IP address 66.25.170.246. The listed owner was Sandra Lafountain, with the registered address of 619 Saddlebrook Drive, San Antonio, Texas. An Accurint search for Sandra Lafountain, 619 Saddlebrook Drive, San Antonio, Texas listed Stephen Hall as an associate.  I believe Sandra

Lafountain to be a direct relative of Hall's wife, Brianna Lafountain/Hall.

### *KIK Search Warrant*

34.    On July 31, 2023, FBI served and received results from a search warrant issued to KIK for username Stephen 4040404040. The results listed Stephen Hall as the registered user with e-mail: tomjohnson4532@gmail.com associated with the account. The most commonly seen IP address was 66.25.170.246. Several of the messages between Hall and various users show what appears to be nude image of minor females.

### *Database Checks*

35.    During a chat session between Hall and the complainant in June 2023, Hall claimed to reside in San Antonio, Texas and that he had ties to Florida. A search of Accurint revealed several addresses for Hall in Florida and an address in San Antonio, Texas, of 619 Saddlebrook Drive, San Antonio Texas.

36.    A search of the Texas driver license database listed a Stephen Eugene Hall, DOB: XX/XX-1983, Texas driver's license number: 47463312 with the listed address of 619 Saddlebrook Drive, San Antonio, Texas.

37.    A search on Facebook returned an account for Stephen Hall. The pictures listed on Facebook are visually similar to the picture of Hall on his KIK profile and those provided to the complainant and OCEs. Hall's Facebook page states he lives in San Antonio, Texas, but is from Hilliard, Florida, and has been married since February 26, 2021. A search of the Bexar County Clerk Office online portal/marriage records revealed Stephen Eugene Hall and Brianna Nichole Lafountain were married 26 February 2021.

38.    In addition to the reported sexual assault of a 15-year-old noted above, Hall was listed as a suspect in a Nassau County Florida report (ID 2015001222) dated March 12, 2015, for "Sex

Offenses (Except Forcible Rape)." The victim was listed as a 17-year-old female whom Hall claimed told him she was 18 years old. Charges were never pursued. The report identified Hall's Florida Driver's license as: H400785834550.

39.     In a San Antonio Police Report (Report number SAPD21010051) dated January 16, 2021, Stephen Hall was listed as a suspect for online solicitation of a minor under 14 years old. Hall's DOB was listed as XX-XX-1983, telephone number 210-636-3053 with an address of 619 Saddlebrook Drive, San Antonio, Texas. Brianna Lafountain, who provided her address as 619 Saddlebrook Drive, San Antonio, Texas, listed Hall as her significant other. In the police report, Lafountain claimed she was checking Hall's email when she saw that Hall was in contact with an 11-year-old female on an app called "Hang out." The conversation between the victim and Hall was sexual in nature. The message thread began on 1/13/2021and started with Hall asking the victim her age. The victim stated she was 11 years old. Hall then asked the victim if her parents are home, to which she stated they were not home. Hall attempted to video call the victim, but the victim stated that her camera was not working. Instead, the victim sent a picture of herself, which appeared to show the female as a minor. Hall instructed the victim to "take two fingers in her pussy and tell him how it feels." In the messages, the victim said she was following Hall's requests. During the conversation, Hall told the victim to let her dogs in the room to have intercourse with her. Hall told the victim of his desires to meet with the victim after she advised him where she lived. Later in the conversation, Hall asked the victim if she has "boobs" or if she can get pregnant. The victim said she does not have breasts and she did not know if she can get pregnant. Hall asked the victim if she had gotten her period yet and asked what grade she was in at school. The victim stated she was in 6th grade. After reviewing the messages, Lafountain believed Hall was also viewing child pornography. The report identified Hall's Florida Driver's license as: H400785834550.

*__Surveillance__*

40.     On July 31, 2023, physical surveillance was conducted at 619 Saddlebrook Drive, San Antonio, Texas. During the drive-by surveillance, a white Nissan sedan bearing Texas license plate number: NCZ-5180 was observed parked and unoccupied in the driveway. The vehicle was registered to Donald Henry Lafountain with 619 Saddlebrook Drive, San Antonio, Texas as its registered address. I believe Donald Lafountain is a relative of Stephen Hall's wife Brianna Lafountain. The vehicle is visually similar to the vehicle seen in a video captured by the complainant in June 2023 with Stephen Hall in the driver's seat.

*__Application__*

41.     Based on the facts as stated in this document, there is probable cause to believe that evidence of the stated violations may be located on the person of **Stephen Eugene Hall**, date of birth XX-XX-1983.

42.     The warrant I am applying for would permit law enforcement to obtain from certain individuals the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

        a.     I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

        b.     If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device.

16

Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

c.      If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes, and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

d.      In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

e.      As discussed in this affidavit, based on my training and experience I believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.      I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are

17

enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours *and* the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

g.     In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose physical characteristics are among those that will unlock the device via biometric features, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any individual, who is found at the Subject Premises and reasonably believed by law enforcement to be a user of the device, to unlock the device using biometric features in the same manner as discussed above.

h.     Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of **Stephen Eugene Hall** or other individuals located at the subject premises, to the fingerprint scanner of the device; (2) hold the device in front of the face of those same individuals and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

18

## SEARCH PARAMETERS

43. *Necessity of seizing or copying entire computers or storage media.*    In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.    Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.    Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.    This is true because of the following:

   a.    The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.    Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.    Storage media can store a large volume of information.    Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

   b.    Technical requirements.    Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.    Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.    The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.    However, taking the storage media off-site and

reviewing it in a controlled environment will allow its examination with the
proper tools and knowledge.

c.  Variety of forms of electronic media.  Records sought under this warrant could
be stored in a variety of storage media formats that may require off-site
reviewing with specialized forensic tools.

44.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B),
the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media
that reasonably appear to contain some or all of the evidence described in the warrant, and would
authorize a later review of the media or information consistent with the warrant.  The later
review may require techniques, including but not limited to computer-assisted scans of the entire
medium, that might expose many parts of a hard drive to human inspection in order to determine
whether it is evidence described by the warrant.

45.    Because several people share the PREMISES as a residence, it is possible that the
PREMISES will contain storage media that are predominantly used, and perhaps owned, by
persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible
that the things described in this warrant could be found on any of those computers or storage
media, the warrant applied for would permit the seizure and review of those items as well.

## REQUEST FOR SEALING

46.    It is respectfully requested that this Court issue an order sealing, until further order of the
Court, all papers submitted in support of this application, including the application and search
warrant.  I believe that sealing this document is necessary because the items and information to
be seized are relevant to an ongoing investigation into the criminal organizations as not all of the
targets of this investigation will be searched at this time.  Based upon my training and
experience, I have learned that online criminals actively search for criminal affidavits and search
warrants via the Internet, and disseminate them to other online criminals as they deem
appropriate, i.e., post them publicly online through the carding forums.  Premature disclosure

of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

47.     Based on the facts as stated in this document, there is probable cause to believe that evidence of the stated violations is located on the stated premises, person, and items.

48.     I respectfully request that the Court issue a search warrant for the items listed in Attachment B to this affidavit.

DAVID RODRIGUEZ

Digitally signed by DAVID
RODRIGUEZ
Date: 2023.08.17 09:16:16 -05'00'

_____
Special Agent David Rodriguez
Federal Bureau of Investigation

Sworn to and subscribed telephonically on this 18TH  day of August, 2023.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  **SA:23-MJ-01158** |
| THE RESIDENCE LOCATED AT 619 SADDLEBROOK DRIVE, SAN ANTONIO, TEXAS 78245; THE PERSON OF STEPHEN EUGENE HALL, AND ANY ELECTRONIC DEVICES AS FURTHER DESCRIBED IN ATTACHMENT B | ) ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Western_____ District of _____Texas_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____09/01/2023_____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Duty Magistrate Judge_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     _____08/18/2023_____ 10:13 AM     _____
*Judge's signature*

City and state:     _____San Antonio, Texas_____     Richard B. Farrer, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Person to Be Searched**

**Stephen Eugene Hall, DOB: 12/15/1983 and any electronic devices on the person**

The following image is a representation of the person to be searched:



**Property to Be Searched**

619 Saddlebrook Drive

San Antonio, Texas

1.      The property, to include the residence, curtilage, out buildings, and vehicles, located at **619 Saddlebrook Drive, San Antonio, Texas, 78245**, which is further described as follows:

A one-story, single-family residence, fabricated with a red-colored brick exterior, brown asphalt shingle roof to include a tan colored garage door. The house number 619 can be seen displayed above the garage door. The following images are a representation of the residence to be searched.



# ATTACHMENT B
## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. § 2422(b).

1.  Computers or storage media used as a means to commit the violations described above.

2.  For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.  evidence of the lack of such malicious software;

    d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

    e.  evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

    f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

    g.  evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

24

    h.   evidence of the times the COMPUTER was used;

    i.   passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

    j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

    k.   records of or information about Internet Protocol addresses used by the COMPUTER;

    l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    m.  contextual information necessary to understand the evidence described in this attachment.

3.   Routers, modems, and network equipment used to connect DEVICES to the Internet.

4.   Child pornography, as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), child erotica, and any other visual depictions of minors.

5.   Records, information, and items relating to violations of the statutes described above including:

    a.   Records, information, and items relating to the ownership or use of the computer or storage media, including sales receipts, bills for Internet access, and handwritten notes;

    b.   Records and information relating to the identity or location of the persons suspected of violating the statutes described above;

    c.   Records and information relating to sexual exploitation of children, including correspondence and communications between users of child pornography and exploitation websites;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing

25

or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

During the execution of the search the person of Stephen Eugene Hall, as described in Attachment A, law enforcement personnel are authorized to press the fingers (including thumbs) of **Stephen Eugene Hall**, to the fingerprint recognition sensor of any device(s) or to use the facial recognition feature of any device(s), found at the premises or on the person of **Stephen Eugene Hall**, as described in Attachment A for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant, provided that device is reasonably attributable to **Stephen Eugene Hall** or is within his care, custody or control